1

2

3

4

5

6

7

8                    IN THE UNITED STATES DISTRICT COURT

9                   FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   PATRICIA AHMADYAR, an individual, )
     AHMAD AHMADYAR, an individual,    )
12                                     )       2:09-cv-02063-GEB-EFB
                    Plaintiffs,        )
13                                     )       ORDER GRANTING FIRST
              v.                       )       HORIZON'S MOTION TO DISMISS
14                                     )       AND MOTION TO EXPUNGE*
     FIRST HORIZON HOME LOANS, a Texas )
15   corporation and a division of First)
     Tennessee Bank National           )
16   Association,                      )
                                       )
17                  Defendant.         )
                                       )
18   ─────────────────────────────────)

19          First Horizon Home Loans ("First Horizon") filed a motion

20   under Federal Rule of Civil Procedure 12(b)(6), in which it seeks to

21   dismiss all of Plaintiffs' claims except for Plaintiffs' RESPA

22   allegations.  (Docket No. 29.)  First Horizon also filed a motion to

23   expunge the lis pendens recorded on the property at issue in this

24   case, which includes a request for attorneys' fees under California

25   Civil Code section 405.38.  (Docket No. 33.)  Plaintiffs did not file

26   an opposition to either First Horizon's motion to dismiss or motion to

27   ─────────────────────────

28          *    This matter is deemed to be suitable for decision without oral
     argument.  E.D. Cal. R. 230(g).

                                      1

expunge.  For the reasons stated below, First Horizon's motions are GRANTED.

## I.  LEGAL STANDARD

### A.  Motion to Dismiss

A Rule 12(b)(6) motion "challenges a complaint's compliance with . . . pleading requirements." Champlaie v. BAC Home Loans Servicing, LP, No. S-09-1316 LKK/DAD, 2009 WL 3429622, at *1 (E.D. Cal. Oct. 22, 2009).  A pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief . . . ." Fed. R. Civ. P. 8(a)(2).  The complaint must "give the defendant fair notice of what the [plaintiff's] claim is and the grounds upon which relief rests . . . ." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007).  Further, "[a] pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do.  Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009).

To avoid dismissal, the plaintiff must allege "only enough facts to state a claim to relief that is plausible on its face." Twombly, 550 U.S. at 547.  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 129 S. Ct. at 1949.  Plausibility, however, requires more than "a sheer possibility that a defendant has acted unlawfully." Id.  "When a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." Id. (quotations and citation omitted).

2

In evaluating a dismissal motion under Rule 12(b)(6), the court "accept[s] as true all facts alleged in the complaint, and draw[s] all reasonable inferences in favor of the plaintiff." <u>Al-Kidd v. Ashcroft</u>, 580 F.3d 949, 956 (9th Cir. 2009). However, neither conclusory statements nor legal conclusions are entitled to a presumption of truth. <u>See Iqbal</u>, 129 S. Ct. at 1949-50.

First Horizon's dismissal motion is accompanied by a request for judicial notice of certain documents related to Plaintiffs' loan transaction and the subsequent sale of Plaintiffs' property at a trustee's sale. Specifically, First Horizon requests that judicial notice be taken of the following six documents: a Deed of Trust executed October 27, 2004, a Substitution of Trustee executed on January 12, 2009, an Assignment of Deed of Trust executed April 2, 2009, a Notice of Default executed January 12, 2009, a Notice of Trustee's Sale executed April 24, 2009 and a Trustee's Deed Upon Sale executed May 23, 2009. (Request for Judicial Notice ("RJN") A-F.) First Horizon's motion to expunge also includes a request that judicial notice be taken of a Notice of Lis Pendens recorded with the Sacramento County Recorder's Office on June 23, 2009.

"[A]s a general rule, a district court may not consider materials not originally included in the pleadings in deciding a Rule 12 motion . . . . [However,] [the court] may take judicial notice of matters of public record and may consider them without converting a Rule 12 motion into one for summary judgment." <u>United States v. 14.02 Acres of Land</u>, 547 F.3d 943, 955 (9th Cir. 2008) (quotations and citations omitted). Facts that are "generally known within the territorial jurisdiction of the trial court" or "capable of accurate and ready determination by resort to sources whose accuracy cannot

reasonably be questioned" are appropriate for judicial notice.  Fed.
R. Evid. 201(b).  The six documents that First Horizon requests be
judicially noticed are publically recorded with the Sacramento County
Recorder's Office, and therefore, may be judicially noticed.
Therefore, First Horizon's requests for judicial notice are granted.

### B.  Motion to Expunge Lis Pendens

"A lis pendens is recorded by someone asserting a real
property claim, to give notice that a lawsuit has been filed which
may, if that person prevails, affect title to or possession of the
real property described in the notice."  <u>Fed. Deposit Ins. Corp. v.
Charlton</u>, 17 Cal. App. 4th 1066, 1069 (1993) (citing Cal. Code Civ.
Pro. §§ 405.2, 405.4, 405.20).  "Once a lis pendens is filed, it
clouds the title and effectively prevents the property's transfer
until the litigation is resolved or the lis pendens is expunged."  <u>BGJ
Associates, LLC v. Superior Court</u>, 75 Cal. App. 4th 952, 966-67
(1999).

"A motion for expungement may be brought at any time after
notice of pendency has been recorded.  The party who recorded the
notice of lis pendens bears the burden of proof in opposing
expungement."  <u>Balagapo v. GMAC Mortg., LLC</u>, 2:09-cv-00405-JAM-GGH,
2010 WL 144108, at *1 (E.D. Cal. Jan. 8, 2010) (citing Cal. Code Civ.
Pro. § 405.30).  The lis pendens must be expunged "if the claimant has
not established by a preponderance of the evidence the probable
validity of the real property claim."  <u>Orange County v. Hongkong and
Shanghai Banking Corp. Ltd.</u>, 52 F.3d 821, 823-24 (9th Cir. 1995)
(quoting Cal Code Civ. Pro. § 405.32).  "To constitute a 'real
property claim' the cause of action, if meritorious, must affect the
right of possession of specific real property or affect the title to

1  the specific real property." <u>Logan v. Resmae Mortgage Corp.</u>,

2  2:09-cv-01632-MCE-GGH, 2009 WL 5206716, at *1 (E.D. Cal. Dec. 24,

3  2009) (quoting Cal. Code Civ. Pro. § 405.4).  To establish the

4  "probable validity" of a "real property claim," the party who recorded

5  the lis pendens must demonstrate "that it is more likely than not that

6  the[y] . . . will obtain a judgment against the defendant . . . ."

7  <u>Orange County</u>, 52 F.3d at 824 (quoting Cal Code Civ. Pro. § 405.32).

8                          **II.  BACKGROUND**

9          On October 27, 2004, Plaintiffs executed a Deed of Trust on

10  their property located at 4609 Careyback Avenue in Elk Grove,

11  California, to secure a loan from First Horizon in the amount of

12  $290,000.00.  (RJN Ex. A; Compl. ¶¶ 8-9.)  The Deed of Trust

13  identifies First Horizon as the lender and trustee, and Mortgage

14  Electronic Registration Systems, Inc. ("MERS"), as the beneficiary and

15  nominee for the lender and the lender's successors and assigns.  (RJN

16  Ex. A.)  Plaintiffs allege that the "loan was originated based upon

17  Plaintiffs' stated rather than verified income and ability to repay

18  the loan."  (Compl. ¶ 10.)

19          On January 12, 2009, First Horizon executed a Substitution

20  of Trustee, naming Quality Loan Service Corporation ("Quality") as the

21  trustee under the Deed of Trust in the place of the original trustee,

22  First Horizon.  (RJN Ex. B.)  The Substitution of Trustee was recorded

23  on February 24, 2009.  (<u>Id.</u>)  Also on January 12, 2009, MERS executed

24  an Assignment of Deed of Trust, assigning all beneficial interest

25  under the Deed of Trust to First Horizon.  (RJN Ex. C.)  The

26  Assignment of Deed of Trust was recorded on April 17, 2009.  (<u>Id.</u>)

27          Plaintiffs were unable to make their monthly payments

28  required under their loan, and on January 12, 2009, Quality, as the

agent for the beneficiary, executed a Notice of Default.  (RJN Ex. D.)
On April 24, 2009, Quality executed a Notice of Trustee's Sale that
was recorded on May 2, 2009.  (RJN Ex. E.)  The Notice of Trustee's
Sale stated that Quality intended to sell Plaintiffs' property at a
trustee's sale to be held on May 21, 2009.  (Id.)  The Notice of
Trustee's Sale also states that the amount of unpaid balance and other
charges owed by Plaintiffs totaled $303,289.58.  (Id.)  Quality sold
Plaintiffs' property at a trustee's sale, held on May 21, 2009, to
First Horizon for $157,250.00.  (RJN Ex. F.)

       After the trustee's sale, Plaintiffs filed a complaint in
the Sacramento County Superior Court on June 19, 2009, alleging ten
claims under state and federal law against First Horizon, Quality and
one hundred "Doe" defendants.  Plaintiffs allege their "loan agreement
is void based upon defendants' violations of disclosure requirements"
and that the "non-judicial foreclosure sale was improper in that
defendants are not holders of the original note."  (Compl. ¶ 56.)
Further, Plaintiffs contend that since defendants did not provide them
"with full disclosure of the loan in the Farsi language" "the entire
loan transaction . . . is subject to rescission."  (Id.)  Plaintiffs
also recorded a Notice of Pendency of Action (Lis Pendens) in the
Sacramento County Recorder's Office on June 23, 2009.

       First Horizon removed this case to federal court based upon
federal question jurisdiction on July 27, 2009.  Following removal, a
Joint Status Report was filed on October 30, 2009, in which Plaintiffs
consented to the dismissal of Quality; therefore, Quality was
dismissed from the action in a Scheduling Order filed on November 12,
2009.  The Scheduling Order also dismissed the "Doe" defendants.  As a

result of these dismissals, First Horizon is the sole remaining
defendant.

### III.  DISCUSSION

#### A.  First Horizon's Dismissal Motion

**1.  Quiet Title**

First Horizon argues Plaintiffs' quiet title claim should be
dismissed since Plaintiffs' have not verified the claim as required by
California Code of Civil Procedure section 760.020.

"California Code of Civil Procedure section 760.020 provides
for an action 'to establish title against adverse claims to real or
personal property or any interest therein.'  Section 761.020 mandates
a 'verified' complaint for a quiet title action to include: (1) a
legal description and street address of the subject real property; (2)
the title of plaintiff as to which determination is sought and the
basis of the title; (3) the adverse claims to the title of the
plaintiff against which a determination is sought; (4) the date as of
which the determination is sought; and (5) a prayer for the
determination of the title of the plaintiff against the adverse
claims." Feliciano v. Washington Mutual Bank, FA, No. 2:09-CV-01304
FCD KJM, 2009 WL 2390842, at *6 (E.D. Cal. Aug. 3, 2009) (citing
Cities Serv. Oil Co. v. Dunlap, 308 U.S. 208, 212 (1939) for the
proposition that when a state rule "relating to an action to quiet
title" is substantive, it applies in federal court).  As recognized in
Feliciano, California's verification requirement is applicable to a
quiet title claim brought in federal court.  Id.  Since Plaintiffs'
quiet title claim is not verified, their claim is dismissed.

//

//

1  **2.  "Rescission Based on Fraud"**

2          First Horizon also argues that Plaintiffs' second claim
3  labeled as "rescission based on fraud," should be dismissed since it
4  does not satisfy the heightened pleading requirements of Federal Rule
5  of Civil Procedure 9(b).

6          Under California law, the elements of a fraud claim are: (1)
7  misrepresentation (including, false representation, concealment, or
8  nondisclosure); (2) knowledge of falsity; (3) intent to induce
9  reliance; (4) justifiable reliance; and (5) resulting damage. Lazar
10  v. Superior Court, 12 Cal. 4th 631, 638 (1996).  However, a state
11  fraud claim pled in federal court must satisfy Federal Rule of Civil
12  Procedure 9(b)'s "particularity" requirements. Vess v. Ciba-Geigy
13  Corp., 317 F.3d 1097, 1103 (9th Cir. 2003); see also Fed. R. Civ. P.
14  9(b) (requiring that "[i]n alleging fraud . . ., a party must state
15  with particularity the circumstances constituting fraud").  Therefore,
16  "[a]verments of fraud must be accompanied by 'the who, what, when,
17  where and how' of the misconduct charged." Vess, 317 F.3d at 1106
18  (citation omitted).  Further, "[t]he plaintiff must set forth what is
19  false or misleading about a statement, and why it is false."  Id.
20  (citation omitted).  Lastly, "Rule 9(b) does not allow a complaint to
21  merely lump multiple defendants together but requires plaintiffs to
22  differentiate their allegations when suing more than one defendant and
23  inform each defendant separately of the allegations surrounding his
24  alleged participation in the fraud." Swartz v. KPMG LLP, 476 F.3d
25  756, 764-65 (9th Cir. 2007) (quotations and citations omitted).

26          Plaintiffs allege that when they applied for their loan,
27  "defendants failed to disclose to [them] that their income would be
28  insufficient to repay the loan." (Compl. ¶ 20.)  Plaintiffs allege

that this non-disclosure was intentional and material and induced reliance.  (Id. ¶¶ 21, 22.)  Plaintiffs further allege that "defendants proceeded toward a Trustee's sale . . . when the true facts are that defendants have no present right to initiate foreclosure under the security instrument."  (Id. ¶ 22.)

These allegations, however, are insufficient to satisfy the heightened pleading requirements imposed by Federal Rule of Civil Procedure 9(b).  Plaintiffs have not differentiated First Horizons' alleged fraudulent conduct, nor have Plaintiffs explained why First Horizon's alleged non-disclosures were false or misleading.  Since Plaintiffs' fraud claim does not satisfy the heightened pleading requirements of Federal Rule of Civil Procedure 9(b), it is dismissed.

**3.   "Unfair Debt Collection Practices"**

First Horizon also seeks dismissal of Plaintiffs' third claim for "unfair debt collection practices."  First Horizon argues this claim should be dismissed since it is not a debt collector under either the Fair Debt Collection Practices Act ("FDCPA") or California's Rosenthal Act.

Plaintiffs' "unfair debt collection practices" claim incorporates by reference the allegations in paragraphs 1 through 25 of the complaint.  Plaintiffs allege "defendants, and each of them, in the taking of the actions aforementioned, have violated provisions of California's Rosenthal Fair Debt Collection Practices Act, including but not limited to § 1788 (e) and (f) of the California Civil Code, and the Federal Fair Debt Collections Act, 15 U.S.C., Title 41, Subchap. V, §§ 1692 et seq., and the Real [Estate] Settlement Procedures Act (RESPA), 12 U.S.C. §§ 2601 to 2617."  (Compl. ¶ 27.) (emphasis omitted).  Plaintiffs also allege that "[o]n March 2, 2009,

[they] sent to Defendant First Horizon a Qualified Written Request per RESPA . . . and TILA . . . requesting that [First Horizon] Postpone any sale until they complied with said Qualified Written Request . . . ."  (Id. ¶ 12.)  Plaintiffs further allege "Defendants failed to respond at all to said statutory request, thus violating RESPA and TILA statutes as referenced herein."  (Id.)   Plaintiffs attached to their complaint the letter they sent to First Horizon that they contend constitutes a qualified written request ("QWR") under RESPA.

The FDCPA and California's Rosenthal Act seek to prohibit debt collectors from engaging in abusive, unfair, or deceptive practices in the collection of consumer debts.  Both statutes, however, only govern the conduct of a "debt collector," which is defined under both statutes.  See 15 U.S.C. § 1692f ("A debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt."); Cal. Civ. Code § 1788.10 ("No debt collector shall collect or attempt to collect a consumer debt by means of" certain prohibited conduct).  A debt collector is defined under the FDCPA as "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due . . . ."  15 U.S.C. § 1692a(6).  The definition of a "debt collector" under the Rosenthal Act is similar.  Cal. Civ. Code § 1788.2(c) (defining "debt collector" as "any person who, in the ordinary course of business, regularly . . . engages in debt collection.").

Plaintiffs have not alleged that First Horizon is a debt collector within the meaning of either the FDCPA or the Rosenthal Act or pled facts suggesting that First Horizon is a "debt collector" as

1  defined by either statute.  Therefore, Plaintiffs' "unfair debt

2  collections practices" claims based upon violations of the FDCPA and

3  Rosenthal Act fail to state a claim and are dismissed.

4  **4.   Unfair Business Practices**

5       First Horizon argues Plaintiffs' claim under California

6  Business and Professions Code § 17200 (the "UCL") should be dismissed

7  since Plaintiffs lack standing to sue.  Specifically, First Horizon

8  argues Plaintiffs "have suffered no damages as they are delinquent on

9  their mortgage, and continue to live rent-free . . . ."  (Mot. to

10 Dismiss 9:18-19.)  Further, First Horizon argues Plaintiffs' UCL claim

11 fails since Plaintiffs have not alleged a viable cause of action.

12       "To bring a UCL claim, a plaintiff must show either an (1)

13 unlawful, unfair or fraudulent business act or practice, or (2)

14 unfair, deceptive, untrue or misleading advertising.  Because section

15 17200 is written in the disjunctive, it establishes three varieties of

16 unfair competition - acts or practices which are unlawful, or unfair

17 or fraudulent.  A practice is prohibited as unfair or deceptive even

18 if not unlawful or vice versa."  Lippitt v. Raymond James Fin. Servs.

19 Inc., 340 F.3d 1033, 1043 (9th Cir. 2003) (quotations and citations

20 omitted).  "[A]n action based on [the UCL] to redress an unlawful

21 business practice 'borrows' violations of other laws and treats these

22 violations . . . as unlawful practices, independently actionable under

23 section 17200 et seq. and subject to the distinct remedies provided

24 thereunder."  Farmers Ins. Exchange v. Superior Court, 2 Cal. 4th 377,

25 383 (1992) (quotations and citations omitted).  "Violation of almost

26 any federal, state, or local law may serve as the basis for a [UCL]

27 claim."  Brewer v. Indymac Bank, 609 F. Supp. 2d 1104, 1122 (E.D. Cal.

28 2009) (quoting Plascencia v. Lending 1st Mortgage, 583 F. Supp. 2d

1090, 1098 (N.D. Cal. 2008)).  "A complaint based on an unfair business practice may be predicated on a single act; the statute does not require a pattern of unlawful conduct." <u>Id.</u> (quoting <u>United Farm Workers of Am., AFL-CIO v. Dutra Farms</u>, 83 Cal. App. 4th 1146, 1163 (2000)).

However, standing to sue is a prerequisite to maintaining a UCL claim, and is satisfied only if the plaintiff has suffered "an injury in fact," having lost either money or property as a result of the alleged unfair competition.  <u>Branick v. Downey Sav. & Loan Assn.</u>, 39 Cal. 4th 235, 241 (2006) (stating that "[a]fter Proposition 64, only those private persons who have suffered injury in fact and have lost money or property may sue to enforce the unfair competition and false advertising laws." (quotations and citations omitted)); <u>see also</u> Cal. Civ. Code § 17204 (stating that a UCL claim may only be maintained by "a person who has suffered injury in fact and has lost money or property as a result of the unfair competition.").

Plaintiffs allege that "the statutory violations and unlawful practices and acts of defendants . . . constitute unlawful business acts and/or practices within the meaning of California Business & Professions Code . . . ."  (Compl. ¶ 31.)  Further, Plaintiffs specify that the "predicate unlawful business acts and/or practices" giving rise to their UCL claim include "defendants' failure to comply with the disclosure requirements of California Civil Code § 1632, California's Rosenthal Act, . . ., and the Federal Fair Debt Collections Act . . . and RESPA . . . ."  (<u>Id.</u>)  Plaintiffs also allege that as a result of "defendants' unlawful conduct . . . [they] have lost hundreds of thousands of dollars in equity in their home, and have suffered injury in fact . . . ."  (<u>Id.</u> ¶ 35.)

1    "Plaintiffs' unfair business practices claim can be
2    predicated upon [First Horizon's alleged] RESPA violation." <u>Brewer</u>,
3    609 F. Supp. 2d at 1122.[1]  However, Plaintiffs have not alleged enough
4    facts to demonstrate that they have standing to sue.  While Plaintiffs
5    allege that they "lost hundreds of thousands of dollars in equity in
6    their home," they have not pled facts demonstrating that First
7    Horizon's alleged failure to respond to Plaintiffs' QWR caused their
8    injury in fact.  <u>Cf.</u> <u>Brewer</u>, 609 F. Supp. 2d at 1123 (finding that
9    plaintiffs had standing to bring a UCL claim predicated upon an
10   alleged RESPA violation where "reading the complaint liberally and as
11   a whole, [plaintiffs alleged] defendants fraudulently transferred
12   plaintiffs' loans to [defendant and] [d]ue to defendants' actions,
13   plaintiffs were allegedly compelled to pay a higher interest rate on
14   their loans, and were thus deprived of money").  Even when Plaintiffs'
15   complaint is construed liberally, they have not demonstrated that they
16   have suffered an injury in fact resulting from First Horizon's alleged
17   RESPA violation.  According, Plaintiffs have not shown they have
18   standing to bring a UCL claim, and their UCL claim is dismissed.

19   **5.   Breach of Fiduciary Duty**

20   First Horizon further argues that Plaintiffs' breach of
21   fiduciary duty claim should be dismissed since a lender does not owe a
22   borrower a fiduciary duty.

23   To state a breach of fiduciary duty claim, a plaintiff must
24   show: (1) the existence of a fiduciary relationship; (2) the breach of
25   that relationship; and (3) damage proximately caused by the breach.
26   <u>Roberts v. Lomanto</u>, 112 Cal. App. 4th 1553, 1562 (2003). However,

27   _____

28        [1]   As discussed below, Plaintiffs have not stated a claim under
     California Civil Code section 1632.

13

1  "[a]bsent special circumstances . . . a loan transaction is [an] at

2  arms-length [transaction] and there is no fiduciary relationship

3  between the borrower and lender."  Oaks Mgmt. Corp. v. Superior Court,

4  145 Cal. App. 4th 453, 466 (2006).  "A commercial lender is entitled

5  to pursue its economic interest in a loan transaction.  This right is

6  inconsistent with the obligations of a fiduciary, which require that

7  the fiduciary knowingly agree to subordinate its interests to act on

8  behalf of and for the benefit of another."  Gonzalez v First Franklin

9  Loan Servs., No. 1:09-cv-00941 AWI-GSA, 2010 WL 144862, at *13 (E.D.

10  Cal. Jan. 11, 2010).  Further, "a lender owes no duty of care to the

11  borrowers in approving a loan."  Id. (quoting Wagner v. Benson, 101

12  Cal. App. 3d 27, 35 (1980)).

13  Plaintiffs allege that "defendants . . . as the lender,

14  trustee and mortgage broker, had, and have a fiduciary duty to

15  Plaintiff to advise them and place them on notice of all disclosures

16  that are required by law, especially in a real estate loan

17  transaction, and to provide Plaintiff[s] with facts from which

18  Plaintiff[s] could make a determination as to the need to either

19  refinance . . . or to be able to qualify for the loan . . . ."

20  (Compl. ¶ 38.)  Plaintiffs further allege that each defendant

21  "breached their duty . . . by failing to provide Plaintiff with the

22  disclosure notices required pursuant to § 1632 of the California Civil

23  Code."  (Id. ¶ 39.)

24  Plaintiffs, however, have not pled facts demonstrating that

25  First Horizon, as Plaintiffs' lender, owed Plaintiffs a fiduciary

26  duty.  Plaintiffs' complaint is devoid of any facts suggesting that

27  First Horizon acted as anything other than a typical lender.

28  Plaintiffs, therefore, have not pled facts showing that any "special

circumstances" justify imposing fiduciary obligations upon First
Horizon.  Accordingly, Plaintiffs' breach of fiduciary duty claim is
dismissed.

**6.  Plaintiffs' Sixth Claim**

        First Horizon also seeks dismissal of Plaintiffs' sixth
claim, which First Horizon construes as alleging a violation of
California Civil Code section 1632(b).  First Horizon argues this
claim should be dismissed since Farsi is not a language included in
California Civil Code section 1632(b), and further, any claim under
section 1632(b) would be barred by the applicable statute of
limitations.

        Plaintiffs' sixth claim, like their fifth claim, is labeled
as a "breach of fiduciary duty" claim.  However, Plaintiffs'
allegations suggest this claim is improperly labeled.  Plaintiffs
allege in this claim: "Defendants did not inform Plaintiffs that they
had a statutory duty to provide Plaintiffs with a Farsi language
translation of the loan documents, which constituted, and constitute
the entire Contract, and failed to provide Plaintiffs with the Farsi
language transaction of the loan documents.  This failure to disclose,
was and is, a breach of the Contract by defendants."  (Compl. ¶ 44.)

        This claim, however, is deficient since Plaintiffs have not
provided First Horizon with "fair notice of what [their] . . . claim
is and the grounds upon which relief rests . . . ."  <u>Twombly</u>, 550 U.S.
at 555.  Plaintiffs have not identified any statute or provision in
any contract which requires First Horizon to provide them with a copy
of their loan documents in Farsi.  Further, to the extent Plaintiffs'
claim rests upon California Civil Code section 1632(b), it fails as
that provision is only applicable to certain contracts negotiated in

"Spanish, Chinese, Tagalog, Vietnamese or Korean." Cal. Civ. Code §
1632(b). Therefore, Plaintiffs' sixth claim is dismissed.

**7.   Breach of the Implied Covenant of Good Faith and Fair Dealing**

First Horizon argues Plaintiffs' breach of the implied
covenant of good faith and fair dealing claim should be dismissed
since there is no "special relationship" between Plaintiffs and First
Horizon giving rise to such a claim.

Plaintiffs allege "Defendants breached the implied covenant
of good faith and fair dealing when they used their superior knowledge
in the real estate, lending, and finance industries to intentionally
hide the fact that Defendants[] were obligated to inform Plaintiffs
that Plaintiffs could not qualify for the loan on the basis of his
[sic] stated income only." (Compl. ¶ 48.) Further, Plaintiffs
"allege that such acts are in complete disregard of their duty thus
breaching the implied covenant of good faith and fair dealing." (Id.
¶ 49.) Plaintiffs plead that "Defendants breaching conduct has led to
the loss" of their property by foreclosure and "compensatory damages
in a sum not less than $500,000.00." (Id. ¶ 50.)

"It has long been recognized in California that there is an
implied covenant of good faith and fair dealing in every contract that
neither party will do anything which will injure the right of the
other to receive the benefits of the agreement." Kransco v. Am.
Empire Surplus Lines Ins. Co., 23 Cal. 4th 390, 400 (2000) (quotations
and citations omitted). According, "[t]he prerequisite for any action
for breach of the implied covenant of good faith and fair dealing is
the existence of a contractual relationship between the parties, since
the covenant is an implied term in the contract." Smith v. City and
County of San Francisco, 225 Cal. App. 3d 38, 48-49 (1990) (citations

omitted).  "Without a contractual relationship, [plaintiffs] cannot state a cause of action for breach of the implied covenant." Id. at 49.

Plaintiffs have not identified any contract they have with First Horizon which forms the basis of their claim.  Therefore, Plaintiffs' complaint "lacks an alleged breach from an identifiable, enforceable contract." Lawrence v. Aurora Loan Services LLC, No. CV F 09-1598 LJO DLB, 2010 WL 364276, at *11 (E.D. Cal. Jan. 25, 2010).

Further, Plaintiffs may not maintain a claim for tortious breach of the implied covenant of good faith and fair dealing. "Generally, no cause of action for the tortious breach of the implied covenant of good faith and fair dealing can arise unless the parties are in a special relationship with fiduciary characteristics.  Thus, the implied covenant tort is not available to parties of an ordinary commercial transaction where the parties deal at arms' length." Pension Trust Fund for Operating Eng'rs v. Fed. Ins. Co., 307 F.3d 944, 955 (9th Cir. 2002) (applying California law) (quotations and citations omitted).  "California courts do not invoke a special relationship between a lender and borrower." Lawrence, 2010 WL 364276, at *12 (citing Kim v. Sumitomo Bank, 17 Cal. App. 4th 974, 979 (1993) & Mitsui Mfrs. Bank v. Superior Court, 212 Cal. App. 3d 726, 729 (1989)).

Plaintiffs' complaint alleges no facts establishing a "special relationship" between Plaintiffs and First Horizon which could give rise to a breach of the implied covenant of good faith and fair dealing.  Therefore, "[t]he breach of implied covenant of good faith and fair dealing claim fails in absence of allegations of a sufficient contractual or special relationship between [First Horizon]

and [P]laintiffs." <u>Lawrence</u>, 2010 WL 364276, at *12.  Accordingly, Plaintiffs' breach of the implied covenant of good faith and fair dealing claim is dismissed.

**8.  Home Ownership and Equity Protection Act**

First Horizon argues that Plaintiffs' Home Ownership and Equity Protection Act ("HOEPA") claim should also be dismissed since Plaintiffs have alleged no facts suggesting that HOEPA is applicable to their loan.  First Horizon also argues that Plaintiffs are not entitled to rescind their loan under HOEPA since any right to rescission was extinguished upon the sale of their property.

Plaintiffs allege "Defendants[,] in violation of 15 U.S.C. § 1639(h)[,] proceeded to originate the loan by lowering their own underwriting standards, and provided funding to Plaintiffs with the entire indebtedness upon Plaintiff[s'] shoulders, which became financially unbearable and burdensome, such that Plaintiffs defaulted on the loan, and lost it to a non-judicial foreclosure sale."  (Compl. ¶ 53.)  Plaintiffs further allege "Defendants violations of 15 U.S.C. § 1639(h) may be remedied only by the rescission of the loan, and the payment of compensatory damages to Plaintiffs in a sum to make Plaintiff[s] whole."  (<u>Id.</u> ¶ 54.)

HOEPA, which is an amendment to the Truth in Lending Act, provides in pertinent part, "[a] creditor shall not engage in a pattern or practice of extending credit to consumers under mortgages . . . based on the consumers' collateral without regard to the consumers' repayment ability, including the consumers' current and expected income, current obligations, and employment."  15 U.S.C. § 1639(h).  However, "[t]he provisions of HOEPA [only] apply to a mortgage secured by the consumer's principal dwelling if, the annual

percentage rate at consummation of the transaction will exceed by more than 10 percentage points the yield on Treasury securities . . . or the total points and fees payable by the consumer at or before closing will exceed the greater of (i) 8 percent of the total loan; or (ii) $400. Pineda v. Reyes, No. 09-cv-01938-H-WMc, 2009 WL 3388376, at *3 (S.D. Cal. Oct. 20, 2009) (quoting 15 U.S.C. § 1602(aa)).  Further, the right to rescind a loan for failure to provide HOEPA disclosures expires "upon sale of the property."  12 C.F.R. § 226.23(a).

Plaintiffs' HOPEA claim is clearly deficient.  First, Plaintiffs fail to allege any facts suggesting that HOEPA's requirements are applicable to their loan.  Further, Plaintiffs' property was sold at a Trustee's Sale on May 21, 2009, and therefore, they may no longer maintain a HOEPA claim for rescission. Accordingly, Plaintiffs' HOPEA claim for damages is dismissed and their HOEPA rescission claim is dismissed with prejudice.

## 9. Declaratory and Injunctive Relief

First Horizon also argues Plaintiffs' ninth claim for "Declaratory and Injunctive Relief" should be dismissed since Plaintiffs' complaint fails to present any credible allegations that the foreclosure was conducted in violation of California law.  First Horizon argues contrary to Plaintiffs' equitable relief allegations, California law does not require that they possess the original note to foreclose under a deed of trust nor was First Horizon required to provide Plaintiffs with copies of their loan documents in Farsi. Lastly, First Horizon argues Plaintiffs cannot state a claim for "injunctive relief" since injunctive relief is a remedy and not a cause of action.

1    Plaintiffs allege their "loan agreement is void based upon
2    defendants' violations of disclosure requirements" and that the "non-
3    judicial foreclosure sale was improper in that defendants are not
4    holders of the original note." (Compl. ¶ 56.)  Further, Plaintiffs
5    contend that since defendants did not provide them "with full
6    disclosure of the loan in the Farsi language" "the entire loan
7    transaction" is subject to rescission." (Id.)  Plaintiffs request a
8    "declaration as to the validity of the Refinance money loan agreement,
9    loan transactions, and defendants' right to have proceeded with the
10   non-judicial foreclosure" and a "preliminary and a permanent
11   injunction under California Code of Civil Procedure § 527 and
12   California Rules of Court, Rule 3.1150 . . . as to any future sale of
13   [their home] . . . to any other and/or third parties and to order the
14   title of the subject property to be transferred back to Plaintiffs."
15   (Id. ¶ 60.)

16       Plaintiffs' claim for "declaratory and injunctive relief,"
17   however, "fails for the simple reason that . . . [Plaintiffs']
18   'claims' [are] a form of relief, not an independent cause of action."
19   Lemieux v. Litton Loan Servicing, LP, 2009 WL 5206641, at *4 (E.D.
20   Cal. Dec. 22, 2009) (quotations and citations omitted); see also
21   Santos v. Countrywide Home Loans, No. Civ. 2:09-02642 WBS DAD, 2009 WL
22   3756337, at *5 (E.D. Cal. Nov. 6, 2009) (stating that "[d]eclaratory
23   and injunctive relief are not independent claims, rather they are
24   forms of relief" (citation omitted)).  Further, even if Plaintiffs'
25   complaint is construed as a request for declaratory and injunctive
26   relief, Plaintiffs have not demonstrated that they are entitled to
27   either remedy.  See Guerra v. Sutton, 783 F.2d 1371, 1376 (9th Cir.
28   1986) (stating that "[d]eclaratory relief is appropriate (1) when the

judgment will serve a useful purpose in clarifying and settling the
legal relations in issue, and (2) when it will terminate and afford
relief from uncertainty, insecurity, and controversy giving rise to
the proceeding" (quotations and citations omitted)); Sierra Forest
Legacy v. Rey, 577 F.3d 1015, 1021 (9th Cir. 2009) (stating that
"plaintiffs seeking a preliminary injunction must establish that (1)
they are likely to succeed on the merits; (2) they are likely to
suffer irreparable harm in the absence of preliminary relief; (3) the
balance of equities tips in their favor; and (4) a preliminary
injunction is in the public interest").  Plaintiffs have not shown
that a declaratory judgment will serve a useful purpose nor that they
have adequately pled any of the factors for awarding a preliminary or
permanent injunction.  See Gusenkov v. Washington Mut. Bank, No. C 09-
04747 SI, 2010 WL 725815, at *6 (N.D. Cal. Feb. 26, 2010) (dismissing
claim for "declaratory and injunctive relief").  Therefore, this claim
is dismissed.

> **B.  First Horizon's Motion to Expunge the Lis Pendens**

**1.  Expungement**

First Horizon argues that the lis pendens attached to
Plaintiffs' property should be expunged since Plaintiffs have not
shown a likelihood of prevailing on the merits of their claims.
Plaintiffs do not oppose First Horizon's expungement motion, and
therefore, have not satisfied their burden of demonstrating the
"probable validity" of any "real property claim."  Further, only
Plaintiffs' RESPA claim survives First Horizon's dismissal motion.
However, Plaintiffs' RESPA claim does not affect title or the right to
possession of Plaintiffs' property, and therefore, is not a "real
property claim."  Since Plaintiffs have not demonstrated the "probable

validity" of any "real property claim," First Horizon's motion to expunge is GRANTED.

**2.   Request for Attorneys' Fees**

First Horizon also argues that it is entitled to recover $962.60 in attorneys' fees under California Code of Civil Procedure section 405.38, which provides "[t]he court shall direct that the party prevailing on any motion [for expungement] . . . be awarded the reasonable attorney's fees and costs of making or opposing the motion unless the court finds that the other party acted with substantial justification or that other circumstances make the imposition of attorney's fees and costs unjust."  The award of attorneys' fees "is mandatory, unless the Court finds that the opposing party acted with substantial justification, or that other circumstances make the imposition of attorneys' fees unjust."  <u>Olivier v. NDEX West, LLC</u>, No. 1:09-CV-00099 OWW GSA, 2009 WL 2486314, at *6 (E.D. Cal. Aug. 12, 2009); <u>see also</u> <u>Castro v. Superior Court</u>, 116 Cal. App. 4th 1010, 1118 (2004) (stating that "a prevailing party on a motion to expunge a lis pendens is *entitled* to recover attorney fees." (emphasis in original)).  Since First Horizon has prevailed on its motion to expunge, it is entitled to recover its reasonable attorneys' fees.

First Horizon's counsel, Rachel Opatik, declares that she spent "one and a half (1.5) hours preparing" the motion to expunge and request for judicial notice and three (3) hours researching and preparing the motion, memorandum of points and authorities, her declaration and the request for judicial notice.  (Opatik Decl. ¶ 3.) Further, Opatik declares that her "time is billed at the . . . rate of $175.00 per hour."  (<u>Id.</u> ¶ 4.)  Opatik also declares that she "anticipate[s] that another one (1) hour of [her] time will be

necessary to review any opposition filed . . . and to prepare for and attend the hearing in this matter." (Id. ¶ 5.)

Since Plaintiffs did not file an opposition to First Horizon's expungement motion and no hearing was held, First Horizon is only entitled to recover attorneys' fees in the amount of $785.50 for the four and one-half (4.5) hours Opatik spent preparing and researching the motion.

**IV.   CONCLUSION**

For the stated reasons, First Horizon's motion to dismiss is GRANTED. (Docket No. 29.)  Plaintiffs, however, are granted leave to file an amended complaint curing the deficiencies of any claim not dismissed with prejudice.  Any amended pleading shall be filed within fourteen (14) days of the date on which this order is filed.

Further, First Horizon's motion to expunge is GRANTED and Plaintiffs shall pay First Horizon $785.50 in attorneys' fees. (Docket No. 33.)  The Notice of Lis Pendens recorded on June 23, 2009 with the Sacramento County Recorder's Office as Instrument 20090623 shall be EXPUNGED.

Dated:  March 25, 2010

_____
GARLAND E. BURRELL, JR.
United States District Judge